**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RD DISTRIBUTION, INC., | |
| Plaintiff, | CIVIL ACTION NO. 3:06-CV-0259 |
| v. | (JUDGE CAPUTO) |
| ROGER DUBUIS NORTH AMERICA, INC. f/k/a HELVETIA TIME CORPORATION and STEVEN A. HOLTZMAN, | |
| Defendants. | |

**MEMORANDUM**

Before me is an application for a preliminary injunction (Doc. 2) by a newly formed corporation known as RD Distribution, Inc., (hereinafter RDD) which seeks to enjoin Steven M. Holtzman and Roger Dubuis North America, Inc. (hereinafter RDNA) f/k/a Helvetia Time Corporation from using Roger Dubuis Genevan Watchmaker and Roger Dubuis trademarks or infringing the trademarks in connection with advertisement, promotion, sale or distribution of any goods or services and from communicating with existing and prospective retailers of Roger Dubuis Watches concerning the sale or offering for sale of Roger Dubuis Watches. Hearings were held on February 15, 2006, February 16, 2006 and February 23, 2006.

On February 22, 2006, Plaintiff filed an amended motion for preliminary injunction (Doc. 28) which sought to add the following orders directed to Defendants:

(A) enjoin the sales of watches with the trademark Roger Dubuis Horloger

Genevois and/or Robert Dubuis without express written consent of MRD[1];

(B) enjoin the sale of the trademark rights to any other person or entity;

(C) enjoin communicating with existing and/or prospective retailers of Roger Dubuis watches concerning Plaintiff(s)[2] or the sale or offering for sale of Roger Dubuis watches;

(D) enjoin holding themselves out to the public as a certified distributor of Roger Dubuis Watches; and

(E)(i) order Defendants to withdraw their request for reconsideration for Roger Dubuis Trademarks under U.S. Custom regulations; and (ii) to notify the U.S. Customs that, to the extent Defendants' consent is necessary, Defendants consent to importing products under the trademark.

Because I find there is no irreparable harm suffered by the Plaintiff RDD, the motion will be denied.

## BACKGROUND

RDNA became the distributor for the United States, Canada, the Carribean and Mexico of Roger Dubuis Watches by virtue of a distribution agreement with the manufacturer, Manufacturer Roger Dubuis, SA, a Swiss Company (hereinafter MRD), which was effective May 19, 1999. (Pl. Ex. 1). The relationship between RDNA and MRD continued until the fall of 2005. Of significance during the period of the agreement was the registration of the trademark "Roger Dubuis" in the United States by RDNA.

---

[1] MRD is the abbreviated form of Manufacturer Roger Dubuis.

[2] Plaintiff RDD sought to add MRD to the Amended Motion for Preliminary Injunction. I denied the amendment to add MRD from the bench on February 23, 2006.

2

On November 10, 2005, MRD purported to terminate the distribution agreement with RDNA by a letter stating as the grounds therefor the non-payment of contractual obligations. (Pl. Ex. 17)  This letter was the result of a failure to pay in accordance with a September 21, 2005 letter (Pl. Ex. 64) which gave RDNA, a 30 day grace period to pay as provided in Article 7.01 of the agreement.  During the course of the two days of hearing on the motion, RDD presented evidence of grey market sales, sales of competitive product and tortious interference, and asserted each was also a ground for termination of the agreement.  RDD also presented an expert on Swiss Law, Daniel Perren, who opined that grey market sales and the sale of competitive product would, under Swiss law, constitute grounds for termination for just cause.

RDNA presented evidence that MRD knew about grey market sales to Westime in 2004 but never objected, much less considered termination.  RDNA also presented evidence that it complained to MRD about grey market sales.  RDNA presented evidence that it was permitted to sell Jean Dunaud, the competing brand, but it didn't sell it anyway.  There were 2 to 3 sales of Jean Dunaud Watches by Mr. Olgle, but it was never clear by whom he was employed at the time of those sales. Lastly, RDNA presented evidence that MRD owed it money at the time MRD asserted that RDNA was delinquent.  The evidence was not clear as to the balance of these debts.

As previously noted, RDNA registered the Roger Dubuis Trademark in the United States.  It claims to have done so with the consent of MRD.  The Trademark Manual of Examining Procedure provides that a distributor  for a foreign manufacturer can register that manufactures trademark if it submits " written consent from the owner of the mark to registration in the applicant's name."  TMEP § 1201.06(a)(2)(a) (2004).

3

RDD was incorporated in New York on February 2, 2006. (Doc. 22 at 1) This motion for a preliminary injunction was filed February 3, 2006. (Doc. 2) RDD had no paid employees as of the date of hearing, and two former employees of RDNA testified they will be the President and Vice President of RDD. There is no evidence of the capitalization of RDD. There is no business being conducted by RDD. It entered into an agreement with MRD on February 2, 2006 to become the MRD distributor in the United States, Canada, the Carribean and Mexico.

Of note is that RDD was incorporated, entered into the distribution agreement, and instituted this suit and motion while a controversy raged between RDNA and MRD over whether the purported termination of the RDNA/MRD agreement was valid. In an action in which RDNA sought to enjoin MRD from terminating the agreement, I determined that the issue of the validity of the termination of the agreement was governed by a forum selection clause in the agreement which essentially provided for dispute resolution before a Swiss tribunal in accordance with Swiss law. *Roger Dubuis North America, Inc. v. C. Duane Thomas*, No. 05-2566 (M.D. Pa. Jan. 20, 2006) (Order denying preliminary injunction.) It is against this backdrop that RDD was incorporated and entered into the distribution agreement with MRD.

## DISCUSSION

An injunction is an extraordinary remedy, which should be granted only in limited circumstances. *Frank's GMC Truck Ctr., Inc. v. General Motors Corp.,* 847 F. 2d 100,102 (3d Cir. 1988).

The standards which must be met in order to secure a preliminary injunction are well known.  They are (1) Irreparable harm if relief is not granted; (2) likelihood of success on the merits of the movant's claim; (3) there would be more harm to the non-movant by granting the injunction than denying the injunction would harm the movant; and (4) the injunction is in the public interest. *A.C.L.U. v. Ashcroft*, 322 F.3d 240, 250 (3d Cir. 2003).

**(1) Irreparable Harm**

Irreparable harm is harm that cannot be compensated in money damages and movant must clearly show "immediate irreparable harm"; not the risk of harm.  *Sprinturf, Inc. V. Southwest Recreational Indus.,* 277 F. Supp. 2d 508, 517 (E.D. Pa. 2003)(citations omitted).

RDD claims that it will suffer irreparable harm if the injunction is not granted.  RDD asserts that the harm is its inability to conduct its business because RDNA continues to hold itself out as the MRD distributor.  RDD says potential customers do not want to deal with Roger Dubuis Watches because of the controversy which is ongoing between RDNA and MRD.  RDD admits the harm is prospective, as it presently conducts no business operations.

The linchpin to RDD's entitlement to proceed as the distributor is the validity of the purported termination in November 2005 between MRD and RDNA, and that controversy is being determined by a Swiss tribunal.[3]

RDD  has yet to suffer irreparable harm, and it has not established it would suffer

---

[3]  MRD argued in CV 3:05-2566 that the forum selection clause in the distribution agreement required that the issue be resolved by a Swiss tribunal and that the claim of RDNA should be dismissed.

5

immediate irreparable harm. When RDD was incorporated and entered into its agreement with MRD, it was fully aware of the raging controversy between MRD and RDNA regarding RDNA's rights to continue as the MRD distributor. Moreover, RDD has not established that it is in a position to conduct the business. RDD entered into an agreement with MRD for distribution rights on the day of its incorporation. It has no employees. There is no evidence it conducts any business. It has only an expectation of selling Roger Dubuis Watches in the event the distribution agreement between MRD and RDNA was properly terminated. It might be said that it struck a business deal which had a risk of never coming to fruition. Further, there is no irreparable harm in those circumstances. It is simply not equitable to find that there is irreparable harm when RDD's entitlement to relief turns on whether the agreement between RDNA and MRD has been terminated, and that issue is in litigation and has not been determined. To hold it does suffer irreparable harm and grant the injunction effectively decides that the RDNA/MRD agreement has been rightfully terminated. This is the very issue I held I could not decide because it was to be determined by a Swiss tribunal pursuant to the distribution agreement between MRD and RDNA.

I do not find that there is immediate irreparable harm to RDD in terms of its ability to conduct business.

RDD also argues that it suffers irreparable harm by virtue of the use and infringement by RDNA of the Roger Dubuis Trademark. The appropriate entity to complain about the trademark registration is the reputed owner of it, MRD. RDD is not the owner of the trademark and has no standing to seek relief against RDNA regarding same. *DEP Corp. v. Interstate Cigar Co.*, 622 F.2d 621, 622 (2d Cir. 1980)(stating that a distributor of

6

a trademarked product who owns no rights in the trademark has no standing to sue for infringement). The Second Circuit Court of Appeals reasoned that the trademark owner was not a party to the said action nor has assigned the trademark to the distributor bringing the claim. *Id*. ("The Lanham Act (15 U.S.C. § 1114(1)) provides that an action for trademark infringement may only be brought by the "registrant," and further defines that term to include the legal representatives, predecessors, successors and assigns of the registrant. (15 U.S.C. § 1127).")

Moreover, RDD claims that "[a] likelihood of consumer confusion constitutes per se irreparable harm." (Doc. 3 at 12.) In support of its position, RDD cites to *S&R Corp. v. Jiffy Lube Int'l*, 968 F.2d 371 (3d Cir. 1992). The Third Circuit Court of Appeals in that case opined that defendant's concurrent use of plaintiff's valid trademark would cause consumer confusion. *Id*. at 375. Furthermore, "[i]rreparable injury can . . . be based on the possibility of confusion . . . [and] trademark infringement amounts to irreparable injury as a matter of law." *Id.* at 378. (citation omitted) RDD, however, has not demonstrated that there is at present, concurrent use of the Roger Dubuis trademark, to cause consumer confusion. Even more importantly, the issue of whether RDNA's use of the trademark is unauthorized is yet to be determined. *Id*. at 375-76. ("To prevail on an infringement claim under § 32 of the Act, [plaintiff] must demonstrate as well that [defendant's] use of the marks was unauthorized.") (citation omitted). Even RDD prefaces its argument with the acknowledgment that "[i]f Defendants are permitted to continue to use the Trademarks after the Agreement is terminated, there will be mass confusion . . . ." (Doc. 3 at 12.) Whether the Agreement has been validly terminated is not before this Court.

7

The use and infringement implicates two levels of analysis. First there is the issue of the registration of the trademark in the United States by RDNA. Second there is the issue of the use and infringement of the trademark.

RDNA's registration of the trademark was done, it says, pursuant to a written consent from MRD. As noted previously, the Trademark regulations allow the registration of the trademark of a foreign manufacturer by its distributor with the written consent of the foreign manufacturer/owner of the trademark. *See* TMEP § 1201.06(a)(2)(a)(2004). While RDD argues the propriety of this registration under the regulations, it provides no authority for RDD's ability to raise this issue in this litigation. The registration issue is, on its face, an issue between RDNA and MRD. RDD provides no authority for RDD to pursue this issue in this case, much less ask the court to raise a constructive trust in the trademark.

The issue of the use of trademark is dependant on the resolution of the validity of the termination of the distribution agreement between RDNA and MRD. If RDNA prevails, it will still, even under MRD's theory, have the right to the use of the trademark. Likewise, RDD's use of the trademark must await resolution of that issue as well, since it cannot displace RDNA as the exclusive distributor in the United States and other named territories unless the termination of the RDNA/MRD agreement is valid.

The trademark claims are between MRD, the owner of the trade name, and RDNA who registered the trademark in the United States. RDD lacks standing to pursue the issue. This is true as to whether RDNA had a right to register it in the first place and also whether there has been an infringement. Assuming that RDD does have standing on the

8

trademark issue, irreparable harm is only presumed upon proof of infringement, and as previously noted, this cannot be determined unless and until the Swiss tribunal determines that the termination is valid and RDNA's use of the trademark is not authorized.

Therefore RDD did not establish that it will suffer irreparable harm regarding the trademark.

### (2) Likelihood of Success on the Merits of its Claim

The likelihood of success on the merits of its claim rests, at the bottom, on the success of MRD's claim before the Swiss tribunal as to whether the distribution agreement between MRD and RDNA was validly terminated.  This is the case whether the issue is RDNA's continued contention that it remains the exclusive distributor of Roger Dubuis Watches or whether it is the issue of trademark infringement.  Each issue turns on the result in Switzerland.

In addition, insofar as the trademark infringement issue is concerned, the dispute over the registration of the trademark is an issue between MRD and RDNA.  RDNA registered the trademark pursuant, it says, to a written consent from MRD.  As previously noted, the Trademark regulations allow the registration of a trademark of a foreign manufacturer by the distributor with the written consent of the foreign manufacturer/ owner of the trademark.  *See* TMEP § 1201.06(a)(2)(a)(2004).  I have determined that RDD has no standing to litigate the appropriateness of the registration, at least in this court, much less seek to raise a constructive trust of the trademark in favor of MRD.  RDD's arguments on this issue are those of MRD.  RDD does not provide any authority for its standing to litigate MRD's rights to the trademark in the United States or any source of standing to

attack RDNA's registration.[4]

In short, it does not appear that RDD has a claim of its own that underlies the application for an injunction. The claim that it asserts is the claim of MRD to the trademark and to the validity of the termination of the distribution agreement by MRD.  This is not RDD's claim; it is MRD's claim that RDD asserts in this case.  I cannot decide the claim, nor should I advance an opinion of its merit since not only is it not before me in this litigation, it is, at least, a part of the dispute between MRD and RDNA which is before another tribunal.[5]

Therefore, having found there is no immediate irreparable harm to RDD, RDD's motion for a preliminary injunction will be denied.

An appropriate order follows.


March 8, 2006                                           /s/ A. Richard Caputo
Date                                                    A. Richard Caputo
                                                        United States District Judge

---

[4]This would appear important since registration is constructive notice of ownership. 15 U.S.C. § 1072.

[5]It is significant that MRD sought to enforce the forum selection clause in the distributors agreement between it and RDNA which required dispute resolution before a Swiss arbitration tribunal.  There I found in favor of MRD.  See CV3:05-2566.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RD DISTRIBUTION, INC., | |
| Plaintiff | NO. 3:06-CV-0259 |
| v. | (JUDGE CAPUTO) |
| ROGER DUBUIS NORTH AMERICA, INC. f/k/a HELVETIA TIME CORPORATION and STEVEN M. HOLTZMAN, | |
| Defendants. | |

## **ORDER**

**NOW**, this 8th day of March, 2006, **IT IS HEREBY ORDERED** that Plaintiff RD Distribution, Inc.'s Motion for Preliminary Injunctive Relief (Doc. 2) is DENIED.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge